```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  TODD KREISLER,

 4              Plaintiff,

 5         v.                              10 CV 7592 (RJS)

 6  SECOND AVENUE DINER CORP,

 7              Defendant.

 8  ------------------------------x
                                           New York, N.Y.
 9                                         June 3, 2011
                                           10:45 a.m.
10
    Before:
11
                   HON. RICHARD J. SULLIVAN,
12
                                           District Judge
13
                            APPEARANCES
14
    ADAM SHORE
15       Attorney for Plaintiff

16  PAUL STAMATELATOS
         Attorney for Defendant
17

18

19

20

21

22

23

24

25
```

1           (Case called)

2           (In open court)

3           THE COURT:  This is Kreisler v. Second Avenue Diner

4    Corp., 10 Civ. 7592.  Let me take appearances for the

5    plaintiff?

6           MR. SHORE:  Adam Shore from the law office of Adam

7    Shore for plaintiff, Todd Kreisler.

8           THE COURT:  Good morning, sir.  And for the defendant?

9           MR. STAMETELATOS:  Paul Stametelatos for the defendant

10   Second Avenue Diner Corp. and JJand K Corp.  Good morning, your

11   Honor.

12          THE COURT:  Good morning, Mr. Stametelatos.  We're a

13   little late getting started, I apologize for that.  I had

14   another matter that went a little longer than I thought.  You

15   guys were on time.  I try not to overbook.  When I start I tell

16   lawyers to be here when I tell them to be here.  Sometimes it

17   goes a little longer, so thank you for your patience.

18          This is a discovery conference.  Discovery should be

19   wrapped up, I know I got a request in early April asking for an

20   extension of the discovery deadlines and I denied that motion

21   for failure to really explain why and then I got another

22   request a couple of days later in which I also denied that

23   request.  So I haven't heard from you since, so where are we

24   and what's going on?

25          MR. SHORE:  Your Honor, since the last court

1    conference, there's really been no effort by the defendants to
2    settle or resolve this matter.  No discovery has been provided.
3             THE COURT:  No discovery has been provided?
4             MR. SHORE:  There's been discovery, I have the letters
5    from defense counsel whereby they objected to almost every
6    interrogatory request for production of document propounded by
7    the plaintiff.  In addition, there's been no expert inspection
8    pursuant to Rule 34 of the facility, and the defendants are
9    unwilling to settle because they're concerned about being sued
10   again and they do not want to install a rest room for people
11   with disabilities and they do not want to install a permanent
12   ramp.  That's why this case has not settled yet.
13            THE COURT:  Cases either settle or they have trial.
14   Those are the two options.  So what are you proposing then at
15   this point, Mr. Shore?
16            MR. SHORE:  I think what I would propose would be for
17   the plaintiff to conduct an expert inspection, if the Court
18   would be so inclined to grant the request and if not, we
19   proceed to trial.
20            THE COURT:  Let me hear from Mr. Stametelatos.  You're
21   being accused of basically not producing discovery, so what's
22   going on?
23            MR. STAMETELATOS:  Mr. Shore is not correct in what he
24   stated to your Honor this morning, Judge.  There was an expert
25   inspection scheduled for April 13th, which Mr. Shore called and

1  said he had to adjourn because his expert couldn't make it to
2  New York. We picked a date for April 26, 4:00. I was at the
3  premises with my client from 3:30 to 4:30. I contacted
4  Mr. Shore, I left him numerous messages, and then he called me
5  I think about two weeks later and said, "I couldn't make it, I
6  got your message but I wasn't aware of it."
7          So I told Mr. Shore initially the only way you're
8  going to get the defendants to look at a possible settlement is
9  to have the expert inspection in, say here's a report, these
10 are the problems and I can try to convince my clients to settle
11 it. So Mr. Shore is saying I'm not trying to settle. I went
12 out of my way, I was at the appointed inspections at the diner,
13 Mr. Shore never showed up.
14         THE COURT: Mr. Shore, I'm not sure what's going on.
15 You wrote a letter to me April 19 and I denied the request for
16 a conference because, citing my individual practices, I pointed
17 out that discovery disputes are to be submitted by joint letter
18 so that I know what the parties have attempted to resolve, what
19 they have resolved and what are the remaining outstanding
20 issues and what are their respective positions, and you didn't
21 do that. Instead, you just sort of gave me your side of the
22 story on April 14, which was as discovery is winding down and
23 then I haven't heard from you again. I'm not sure what's going
24 on. Do you just have so many of these cases and you don't
25 really intend to litigate them, you just expect quick

1  settlements or did you just have trouble understanding my
2  individual practices?
3           MR. SHORE:  No, your Honor.
4           THE COURT:  So why am I in June having a conversation
5  about discovery disputes?  Discovery is over, right?
6           MR. SHORE:  Yes, your Honor, discovery is over.  Good
7  faith efforts were made to comply with your Honor's rules.
8           THE COURT:  Well, how so?
9           MR. SHORE:  Mr. Stametelatos and I met in person at
10 his office and discussed the nature of the outstanding
11 discovery.  We were unable to reach an agreement of what needed
12 to be evaluated when.  I attempted to draft a proposed joint
13 letter, which Mr. Stametelatos did not sign.  We therefore
14 requested an extension of time to conduct discovery.
15 Mr. Stametelatos mentioned that on April 26 there was an expert
16 inspection scheduled.  However, due to the --
17          THE COURT:  On April 26?
18          MR. SHORE:  April 26 --
19          THE COURT:  He said the 13th, right?
20          MR. STAMETELATOS:  The first time is from his notice
21 of the inspection, your Honor.  He sent me a notice which I
22 said April 13 is fine.  But Mr. Shore called I think two days
23 earlier and said his expert -- I think he was from Florida,
24 your Honor, couldn't make it.  So I said no problem let's pick
25 another date and we picked the 26th.

163FKREC

1            THE COURT:  And what happened on that date?

2            MR. SHORE:  Yes, your Honor, he's correct there was an

3    expert on the 13th, he was in Florida and could not make it due

4    to a prior obligation.  I then wrote a letter requesting an

5    extension of time to conduct the inspection and since that

6    request was denied the plaintiff's expert did not appear on the

7    26th of April for the expert inspection.

8            THE COURT:  All right.  So, look, we either schedule a

9    trial date or I allow some limited additional discovery so that

10   this thing is in the posture where it can actually be tried.

11   And so let me ask Mr. Stametelatos what do you propose we do

12   here?

13           MR. STAMETELATOS:  Judge, the defendant doesn't have

14   to do anything at this time, your Honor.  Discovery is

15   basically closed.  I went out of my way, I produced whatever I

16   could produce to the plaintiffs, your Honor.

17           THE COURT:  Well, I'm not sure what that means, you

18   produced whatever you could produce.

19           MR. STAMETELATOS:  Whatever discoverable items I got

20   from my client.  Most of the items Mr. Shore requested in his

21   request for production are public documents if he so wished,

22   your Honor, regarding repairs, renovations, permits filed,

23   those he can get from the Building Department, or the New York

24   City Building Department website.

25           THE COURT:  What is your defense to this claim?

| | |
|---|---|
| 1 | MR. STAMETELATOS:  Our defense is that it's not |
| 2 | readily achievable your Honor, number one.  Number two, my |
| 3 | client has done whatever possible to make it accessible to |
| 4 | handicapped persons, your Honor. |
| 5 | THE COURT:  The key issue it seems to me at any trial |
| 6 | is going to be whether or not the alterations necessary to make |
| 7 | the facility accessible is readily achievable, right? |
| 8 | MR. STAMETELATOS:  That's correct, your Honor. |
| 9 | THE COURT:  So what is that trial going to look like? |
| 10 | Mr. Shore?  What is it going to look like given the state of |
| 11 | the discovery and the state of the record at this point? |
| 12 | Nobody has moved for summary judgment, so I presume the next |
| 13 | step is we set a trial date.  So tell me what this trial is |
| 14 | going to look like. |
| 15 | MR. SHORE:  Your Honor, the trial would look like if |
| 16 | the Court would allow an expert, there was a presuit inspection |
| 17 | and by plaintiff's expert and also in addition Mr. Stametelatos |
| 18 | presented pictures to, further pictures of the facility |
| 19 | including the rest room to the plaintiff's counsel, which was |
| 20 | relayed to plaintiff's expert, and there is some -- although no |
| 21 | measurements have been taken to be able to testify as to |
| 22 | whether the bathroom can be expanded, since no exact |
| 23 | measurements were taken, the modifications that were proposed |
| 24 | by the plaintiff's expert to the bathroom were denied by |
| 25 | defendant's counsel.  We would present expert testimony based |

1    on the presuit inspection pictures and also it's just clear, I
2    have a picture of the facility here, if your Honor would like,
3    it's clear that a permanent ramp can be placed at the entrance
4    at minimum so certainly I think the trial would look like the
5    plaintiff would prevail just on the entrance alone.
6             THE COURT:  The fact that something is not readily
7    achievable is an affirmative defense is it not?
8             MR. SHORE:  Yes.
9             THE COURT:  You're going to argue that it's not
10   accessible.  Is that in dispute, Mr. Stametelatos?
11            MR. STAMETELATOS:  Yes, your Honor.
12            THE COURT:  So you're suggest that a wheelchair can
13   get into that bathroom?
14            MR. STAMETELATOS:  Yes, your Honor.  There are people
15   with wheelchairs that gain access to the diner and into the
16   rest room, that's correct.
17            THE COURT:  So that's one issue.  And then you're also
18   going to be asserting the affirmative defense that expanding
19   the bathroom or altering the facility was not readily
20   achievable.
21            MR. STAMETELATOS:  Yes, your Honor.
22            THE COURT:  That's an affirmative defense, so how are
23   you going to prove that?
24            MR. STAMETELATOS:  We can bring in an expert, your
25   Honor.

1             THE COURT: Well, I mean, expert discovery is over,
2    too. Is there an expert? Have you noticed an expert? Have
3    you provided an expert report?
4             MR. STAMETELATOS: No, I have not, your Honor.
5             THE COURT: So you think you're going to just do that
6    for the first time at trial?
7             MR. STAMETELATOS: Basically, the plaintiff has to
8    prove its case first, your Honor.
9             THE COURT: He's got to prove that the facility is not
10   wheelchair accessible, right? That's what he's got to prove.
11            MR. STAMETELATOS: That's correct, Judge.
12            THE COURT: If he can prove that, it seems, among
13   other things, you can prove the defense that it's not readily
14   achievable. I don't know how anybody is going to do that
15   without an expert.
16            MR. SHORE: But I think the plaintiff has to prove
17   that it's readily achievable, your Honor.
18            THE COURT: That's what I just asked, it's an
19   affirmative defense.
20            MR. STAMETELATOS: But it's also part of the
21   plaintiff's case, that it's readily achievable.
22            THE COURT: Do you agree with that, Mr. Shore? Do you
23   agree that you have to prove that it is readily achievable and
24   then there's an affirmative defense that it's not readily
25   achievable?

1             MR. SHORE:  There's numerous laws which states that
2     it's almost always readily achievable to install a ramp when
3     there's only one step at a facility.  I think it's clear
4     without any question, without any doubt that it is readily
5     achievable to install a permanent ramp.  There's numerous
6     publications published by the New York City Human Rights Office
7     which states it's almost always readily achievable to install a
8     permanent ramp.  I'm happy to call defendants and question them
9     with regard to what the basis for asserting it's not readily
10    achievable, and I think it will be clear that it is readily
11    achievable to install a permanent ramp without too many
12    modifications, if necessary.  I think just by calling the
13    defendants plaintiff would be able to prove its case very
14    easily.
15            THE COURT:  There are a variety of factors,
16    non-exclusive list, which you didn't actually cite in your
17    letter from April 14 that a fact finder should be looking to to
18    determine whether the alterations are readily achievable.  Has
19    discovery been done that would allow the fact finder to
20    consider these different factors?  Overall financial resources
21    of the facility?
22            MR. SHORE:  Defense counsel stated over numerous phone
23    conversations he was going to send me financial records of
24    defendants.  He said he was going to send it by mail to me.  I
25    never received financial records.  I can ask questions of

1   defense counsel regarding their financial condition on the
2   stand, and be able to prove the case that it is readily
3   achievable in that fashion and through any other witness who
4   could be called.
5           THE COURT:  I don't know what any of that means.  So
6   you've not received discovery that you've sought, right?
7   That's what you're saying?
8           MR. SHORE:  Correct, your Honor.
9           THE COURT:  The overall financial resources and the
10  overall size of business of the covered entity, the type of
11  operation or operations, including the composition, structure
12  and functions of the work force, the number of persons employed
13  at the facility, the effect of expenses and resources or the
14  impact otherwise of such action upon the facility, do you have
15  that stuff or you don't have that stuff?
16          MR. SHORE:  I do not have any of those materials.
17          THE COURT:  So what have you received from
18  Mr. Stametelatos?  If we put all the paper on that table, how
19  big a pile would it be?
20          MR. SHORE:  It would just be a lease agreement.
21          THE COURT:  That's the only thing you received is a
22  lease agreement.
23          MR. SHORE:  Yes.
24          THE COURT:  What are you doing, Mr. Stametelatos?
25  You're saying that's the only document you have that is

1    responsive to the requests that you received?

2              MR. STAMETELATOS:  I gave Mr. Shore a lease, your

3    Honor.  I've given him photographs of the premises, I gave him

4    copies of some plans of the only alterations that were ever

5    done to the premises.

6              THE COURT:  What about the financial condition of your

7    client?

8              MR. STAMETELATOS:  When I spoke to Mr. Shore I sent

9    him a draft protective order regarding confidentiality, your

10   Honor, because my client instructed me not to release any

11   financials unless we could get a protective order regarding the

12   confidentiality of those financial documents.

13             THE COURT:  So you sent a proposed confidentiality

14   agreement to Mr. Shore?

15             MR. STAMETELATOS:  I did, your Honor.

16             THE COURT:  Mr. Shore, what are you doing?

17             MR. SHORE:  I never received a confidentiality order.

18   Never received it.

19             THE COURT:  Do I literally have to hold you guys'

20   hands?  Have you done this before?  Is this your first time?

21             MR. SHORE:  No.

22             THE COURT:  So what have you done here?  You're the

23   plaintiffs.  You brought this case October of 2010.  I would

24   think you want to get this thing done.  You've gotten a lease

25   agreement and all you've done is basically send a couple of

1    letters that are not in conformity with my individual practices
2    asking for extensions.  The first was basically two sentences
3    and the second was, again, just unilateral and it didn't really
4    explain why you weren't sending it as a joint letter and why it
5    is that these requests hadn't been complied with previously.
6    And so now it's June and you've done nothing since this letter,
7    right?  That's what you're telling me?
8             MR. SHORE:  Yes, your Honor.
9             THE COURT:  Why?
10            MR. SHORE:  I had phone conversations with defense
11   counsel.  This is the first time I've heard from defense
12   counsel that people in wheelchairs can access the bathroom.
13   After defense counsel sent pictures of the bathroom,
14   plaintiff's expert recommended a series of steps that the
15   defendants could take to make the bathroom accessible to people
16   with disabilities, including putting in side grab bars,
17   insulation under the sink, lower the trash can, lowering the
18   mirror, among other things.  There's not exact measurements --
19            THE COURT:  It's not supposed to work this way.  Do I
20   have to tell you this?  It seems, Mr. Stametelatos, like you
21   basically took the position I'm not going to produce anything
22   and if he's not going to make a fuss then I will luck out
23   because the clock will have run and he won't be in a position
24   to try his case, which might actually be a successful strategy,
25   but I'm not sure that it's a wise one.

1    MR. STAMETELATOS: Your Honor, when we had scheduled
2    even depositions I told Mr. Shore --
3            THE COURT: Have there been any depositions?
4            MR. STAMETELATOS: No, your Honor.
5            THE COURT: None. So you've had no depositions,
6    you've had no documents produced besides the lease from the
7    defendant. You've had no expert discovery. What are we doing
8    here? Why am I not dismissing this case for failure to
9    prosecute, Mr. Shore? Seems to me if you have too many of
10   these that you just can't do them all, you've got to give this
11   to somebody else.
12           MR. SHORE: Your Honor, I'd like to address both those
13   issues. First of all, we have two pending cases in the Court.
14           THE COURT: What's your excuse for doing no
15   depositions, no expert discovery and not doing any document
16   discovery?
17           MR. SHORE: I noticed the defendant for depositions,
18   Mr. Stametelatos canceled the depositions and rescheduled them
19   the last date to conduct depositions at his office which I
20   agreed to produce my clients and depose the defendants. I
21   received a letter from Mr. Stametelatos's office stating that
22   depositions couldn't be done because there are steps and
23   plaintiff wouldn't be able to get into his office. That's why
24   the depositions were not conducted at that time.
25           THE COURT: So that's when you just said, well, I'm

```
 1   helpless, what else can I do?
 2            MR. SHORE:  I did everything I can do.
 3            THE COURT:  You've got to be kidding.  I've got to
 4   bring your client in here because your client has got to listen
 5   to you saying this.  This is a client that put his trust in you
 6   to represent him in this matter, in a matter which is pretty
 7   important here, unless it's just a mill in which you're the
 8   real client, but I don't presume that.  How could it be that
 9   you've done everything you can do?  You haven't gotten anything
10   more than a lease agreement, haven't taken any expert
11   discovery, no depositions.  Discovery is now over and,
12   seriously, as an officer of the Court you've done everything
13   that you could do?
14            MR. SHORE:  Maybe not everything, but I tried in good
15   faith to send a joint letter and to apply to the Court once I
16   realized discovery was not going to be provided.
17            THE COURT:  Expert discovery was not to be concluded
18   until the middle of May and you've done nothing on that, right?
19            MR. SHORE:  I sent a letter as soon as I found out
20   from plaintiff's expert that he wasn't going to attend.  I also
21   retained a local expert and I sent a letter to defendant --
22            THE COURT:  I think I should dismiss this case for
23   failure to prosecute.  I'm not going to do that because I don't
24   think it's fair in this case.  I'm going to give you 30 days to
25   get your act together and if you don't get your act together,
```

163FKREC

1  I'm going to dismiss the case.  This is embarrassing.  This is
2  not how you should conduct yourselves.  There are people here
3  listening to this.  This is the standard for civil litigation
4  in this courthouse?  Not acceptable.  And if you ignore another
5  discovery request I'm going to sanction you.
6           MR. STAMETELATOS:  I have not ignored --
7           THE COURT:  You clearly have.
8           MR. STAMETELATOS:  I answered every --
9           THE COURT:  You clearly have.  Don't start with me.
10 You've done nothing.  You produced a lease.  You haven't
11 produced a witness, you haven't deposed a witness or a party.
12 You guys have done nothing.  This is not the way it works.  Not
13 in my courtroom it doesn't work this way.  You don't want to be
14 here, you don't have to be here.  You can resolve this case on
15 your own.  But if you're going to be in federal court then
16 you're going to comply with court orders which set a discovery
17 schedule that you folks proposed and if you can't get it done
18 because you're just too busy or you just don't give a damn,
19 that's not my problem.  I'm going to give you 30 days to get
20 this right and it's not going to happen again.  Understood?
21          MR. STAMETELATOS:  Yes, your Honor.
22          THE COURT:  All right.  30 days.  I will issue an
23 order to that effect.  But, come on, this is a disgrace.
24          (Adjourned)
25