UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TODD KREISLER,                                    Case No.: 10cv7592 (RJS)

                              Plaintiff,

              -against-

SECOND AVENUE DINER CORP. d/b/a
PLAZA DINER and J.J.N.K. CORP.,

                              Defendants.

--------------------------------------------------------X
_____

**DEFENDANTS' POST TRIAL CLOSING STATEMENT**
_____

Defendants, Second Avenue Diner Corp. d/b/a Plaza Diner and J.J.N.K. Corp.,
by and through their counsel, Paul Stamatelatos, Esq., submit this Closing Statement
after the trial on October 12, 2011.

## I.   SUMMARY OF THE CASE

Todd Kreisler ("Kreisler" or "Plaintiff"), commenced this action claiming that
defendants, Second Avenue Diner Corp. d/b/a Plaza Diner (hereinafter "Plaza Diner" or
"Diner") and J.J.N.K. Corp., the owner of the building located at 1066 Second Avenue,
New York, NY (the "Property") failed to comply with Title III of the Americans with
Disability Act ("ADA") 42 U.S.C. §§ 12181 – 12189.

Plaintiff in his Complaint at paragraph 13. a - h claims the following violations:

a.  A step at the entrance of the Plaza Diner creates an architectural barrier;

b. A vestibule at the entrance creates an architectural barrier;

c. Failure to provide accessible fixed tables in the inside seating area;

d. The cashier/serving bar counter is higher than 36 inches;

e. Failure to provide adequate directional and accurate signage;

f. Failure to provide signage  that accessible services are provided for people with disabilities;

g. Failure to modify restrooms for accessibility including failing to:

   (i)     Rearrange walls, doors, toilet and lavatory to increase maneuvering space;

   (ii)    Provide an accessible toilet with a rear grab bar;

   (iii)   Provide a clear floor space of 30 inches by 48 inches in front of a lavatory;

   (iv)   Insulate lavatory pipes under the sink to prevent burns;

   (v)    Failure to provide an accessible soap dispenser;

   (vi)   Provide appropriate signage on the outer door indicating that the restroom is handicap accessible.

h. Failure to provide a safe handicap accessible emergency exit.

At issue herein is whether (1) Plaintiff has established standing as to each violation of the ADA as alleged in his Complaint;  and (2)  if Plaintiff has met his burden that the proposed modifications to make the Plaza Diner fully ADA complaint are readily achievable.

## II. SUMMARY OF THE ARGUMENT

This Court ruled on Defendants' motion for summary judgment and reading the facts most favorable to the Plaintiff, the Court found that Plaintiff had standing to pursue his ADA claims for violations inside the Diner, even though Plaintiff had never been inside the Diner and was not aware of any of the alleged violations. At trial Plaintiff testified that he was not familiar with the claimed ADA violations of the interior of the Diner **at the time the Complaint was filed** (Tr. p. 43; L. 23-25, p. 44; L. 1-5). Therefore, in accordance with the cases cited by this Court in its order denying Defendants' motion for summary judgment, the Court should find that Plaintiff lacks the necessary standing for any claims relating to the interior of the Diner. Accord, Access 4 All, Inc. v. Trump International Hotel and Tower, 458 F. Supp. 2d 160, 174 (2006) ("Here, there is no evidence in the record that shows that Spatullo, or any other member of Access 4 All had any knowledge of the 31 additional violations of the ADAAG at the point from which the Court evaluates standing – the time the Complaint was filed.") See, Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000) (of multiple plaintiffs, only the Burch plaintiff had standing … "standing is based on the facts as they existed at the time the lawsuit was filed". Young had not been in the [coffee shop] and testified that he did not know whether the building was ADA-compliant.]"; Cleveland Branch, NAACP v. City of Parma, Ohio, 263 F.3d 513, 524 (6th Cir. 2001).

Since a restaurant has been operating on the ground floor of the property located at 1066 Second Avenue, New York, New York since 1990 and no alterations have been made to the restaurant since 1990, the "readily achievable "standard applies for

removing architectural barriers under the ADA. <u>See</u>, 42 U.S.C. § 12182(b)(2)(A)(iv); 28 CFR 36.304. <u>See also</u> 28 CFR 26.402 (addressing standards of compliance for alterations made to an existing facility before and after January 26, 1992).

The modifications that Plaintiff is seeking to make the Plaza Diner accessible to him are not readily achievable as the costs of the modifications exceed the benefits and Plaintiff has not met the burden required under the readily achievable standard.

If this Court should find that the Plaintiff has standing then Defendants contend that Plaintiff has failed to prove the alleged violations, or alternatively that the Plaintiff has failed to met his burden that the removal of the alleged barriers are readily achievable.

## III. SUMMARY OF THE TESTIMONY AT TRIAL

### A. Plaintiff's testimony:

Plaintiff testified that he lives at 250 East 60th Street, New York City (Tr. p. 20; L. 18-21), four blocks from the Plaza Diner and that the first time he went past the Plaza Diner was around September 2008 (Tr. p. 22; L. 14-16). Plaintiff wants a permanent ramp installed at the Diner as it is easier for him and so that his wheelchair is not damaged (Tr. p. 24; L. 16-22). Plaintiff has accessed other restaurants with portable ramps (Tr. p. 25; L. 3-5).

Plaintiff has never visited the Plaza Diner (Tr. p. 26; L. 22-24), and has never been inside the Diner (Tr. p. 27; L. 15-16. He never tried to access the Diner (Tr. p. 27; L. 17-19) and has never stopped by the Plaza Diner (Tr. p. 28; L. 8-10). In addition, Plaintiff has never seen a menu (Tr. p. 29; L. 8-10), and does not know what food is served at the Diner (Tr. p. 29; L. 11-14). Plaintiff orders out from restaurants for delivery

to his apartment, but has never ordered for delivery from the Diner (Tr. p. 29; L. 15-23). Plaintiff is not aware of any of the alternative services the Diner offers people with disabilities (Tr. p. 41; L. 2-4).

Plaintiff does not know if people in wheelchairs are able to access the Diner (Tr. p. 34; L. 15-21).

Plaintiff is not aware of any alterations to the Diner since January 26, 1992 (Tr. p. 35; L. 19-25) and has no personal knowledge of any renovations, repairs or remodeling to the Diner since January 26, 1992 (Tr. p. 36; L. 6-14).

Plaintiff did not take any measurements at the Plaza Diner and has never been to the Plaza Diner with his attorney or expert witness (Tr. p. 41; L. 5-11).

Plaintiff cannot get into the bathroom  (Tr. p. 40; L. 1-5) and wants the Diner to be made fully ADA compliant (Tr. p.37; L. 19-22), and will only dine at the Diner if he can get in and use the bathroom (Tr. p. 69; L. 4-12). Plaintiff does not know if a permanent ramp can be installed at the Diner or what the cost would be. (Tr. p. 60; L. 24-24; p. 61; L. 1-7)

The width of Plaintiff's wheelchair is thirty inches (Tr. p. 47; L. 10-12).

Plaintiff saw the Complaint filed in this action for the first time at his deposition on June 30, 2011 (Tr. p. 42; L. 15-20) and is only aware of the step at the entrance to the Diner. He was not aware of the other alleged violations in the Complaint at the time the Complaint was filed (Tr. p. 43; L. 23-25, p. 44; L. 1-5).

Plaintiff has commenced fifteen other lawsuits in the Southern District Court. Not all the facilities that Plaintiff sued have installed permanent ramps or made the bathrooms ADA compliant.

**B. Discussion Plaintiff's Picture Exhibits**

**Plaintiff's Exhibit 15 (1-28) photographs relating to the interior of the restaurant should be excluded from Evidence.**

Fed. R. Civ. P. 26 (a)(1) requires that a party must disclose the name of each individual likely to have discoverable information that the party may use to support its claims. The preclusion of unidentified witnesses is automatic, unless the failure was substantially justified or is harmless. 8A Charles Alan Wright & Arthur R Miller, Federal Practice and Procedure § 2289.1 (2d ed. 1994).

The Defendants first learned of the pictures inside the restaurant when exhibits were provided by Plaintiff's attorney on October 11, 2011. The pictures were not taken either by Plaintiff or Plaintiff's Expert. Plaintiff should have disclosed the identity of the picture taker in accordance with FRCP 26 (a)(1).

Defendants did not have any chance to cross examine the picture taker. At least one of the pictures (the women's bathroom) was inaccurate (Defendants' Exhibit 34 – photograph of the women's bathroom at the Plaza Diner).

Defense counsel noted an objection to the pictures at trial.

**C. Testimony of Mike Aronis an officer and employee of the Plaza Diner**

Mike Aronis has worked at the Plaza Diner since 1998 (Tr. p. 83; L. 19-22). People in wheelchairs are able to access the Plaza Diner (Tr. p. 83; L 7-12) and the staff at the Diner are trained to offer assistance to people with disabilities if they need assistance (Tr. p. 91; L. 15-21). People in wheelchairs have used the restroom at the Diner (Tr. p. 100; L. 21-25).

The changes made to the Plaza Diner consisted of painting (Tr. p. 117; L. 12-13),

replacing ceiling tiles and light fixture ballasts (Tr. p. 91; L. 15-21), changing the air-conditioning unit in 2008 (Tr. p. 95; L. 9-11), and some kitchen equipment (stove, grill and salamander) (Tr. p. 95; L. 18-23). In 2009 a walk-in refrigerator was changed (Tr. p. 95; L. 1-5), some of the seats were reupholstered and the exterior sign was changed from neon to LEDs (Tr. p. 95; L. 12-16).

The entrance door, vestibule, seating configuration, and counter have not been changed (Tr. p. 121; L 4-15).

That the Diner has a seating capacity for fifty persons (Tr. p. 124; L. 23-25). That there are booths which can seat forty people and there are ten fixed stools at the counter where people can dine. That people prefer to be seated at the booths when they dine at the Diner (Tr. p. 125; L. 12-17). That the aisle between the booths is 32 inches wide (Tr. p. 125; L. 18-21).

That the Diner would lose a four seat booth if the vestibule is changed and made ADA compliant (Tr. p. 123; L. 10-17, p. 124; L. 5-9). A loss of 3 or 4 seats would result if the counter is changed (Tr. p. 124; L. 10-15), and a loss of one to two booths if the two bathrooms are changed (Tr. p. 124; L. 16-19). If the aisle is widened the Diner would lose more seating capacity  (Tr. p. 126; L. 2-10), making for a total loss of 16 to 20 seats. Furthermore, the Diner would have to be closed for business for three months to make the changes (Tr. p. 127; L. 10-18), and the cost would be $100,000.00 to $150,000.00 (Tr. p. 135; L. 1-8). The Diner would lose regular clients and employees if it closed down (Tr. p. 136; L. 1-10).

The net income for the Diner for 2010 was $23,383.00.

The Diner also has a beer and wine license which requires two bathrooms (Tr. p.

127; L. 14-18)

   **D.  Testimony of John Kalas, an officer of J.J.N.K. Corp.**

     That the property on which the Plaza Diner is located was purchased in the 1970s
(Tr. p. 149; L. 8-11).

The only changes made to the Plaza Diner consisted of painting, changing ceiling tiles,
air-conditioning and ansul system in the kitchen (Tr. p. 152, L. 10-13). That the Plaza
Diner has not applied to the NYC Department of Buildings to make any renovations,
alterations or remodeling since 1992 (Tr. p. 192; L. 1-4). That he researched the public
records in the building department and that the last renovations at the Diner took place
in 1990 (Tr. p. 192; L. 5-11). The income for J.J.N.K. Corp. is $36,000.00 per year.

   **E.  Testimony of Plaintiff's Expert, Leon Geoxavier**

     That he visited the Diner one time on June 15, 2011, to do an expert report, but
did not take any notes (Tr. p. 246; L. 11-13). That his recollection of measurements is
based purely on memory (Tr. p. 248; L. 11-13). He has never seen a survey of the
property on which the Diner is located (Tr. p. 249; L. 11-15) and does not recall the
telephone booths in front of the Diner (Tr. p. 281; L. 15-18).

     That a permanent ramp can be constructed in the interior of the Diner (Tr. p. 211;
L. 17-22), and believes that he measured for the interior ramp, but does not remember
the actual measurements (Tr. p. 213; L. 9-17) and that the cost of a ramp would range
from $3,000.00 to $10,000.00 (Tr. p. 222; L. 8-9). He never measured the width of the
sidewalk on Second Avenue and admitted that the width of the sidewalk plays a part in
whether a permanent ramp can be installed at a particular location (Tr. p. 250; L. 3-9).
He never contacted any governmental agency to ascertain whether a permanent ramp

can be installed at the Plaza Diner (Tr. p. 252; L. 5-8). He did not consider the different options to reconfigure the vestibule (Tr. p. 214; L. 24-24; p. 215; L. 1-11), and did not know what size the vestibule needed to be ADA compliant (Tr. p. 260; L. 20-23). He did not consider the cost of any configurations (Tr. p. 216; L. 3-10), but stated that the cost of reconfiguring the vestibule would be between $5,000.00 and $10,000.00. He did not research where the landing for the permanent ramp would be (Tr. p. 254; L. 2-6).

That an exterior permanent ramp would be approximately 10 feet long along Second Avenue (Tr. p. 216; L. 20-25) and does not know if the code or the City or governing agents would mandate a handrail if a permanent ramp is installed (Tr. p. 218; L. 3-9).

That he only went into the men's restroom and not the women's restroom as he did not think it necessary to go into the women's restroom (Tr. p. 225; L. 15-21).

That he did not provide any cost estimates as he was not requested to do so (Tr. 222; L. 16-24).

He did not take any measurement in the men's bathroom and was not able to explain how the men's bathroom did not comply with the ADA (Tr. p. 227; L 4-14). He did not do a cost analysis for the restrooms (Tr. p. 234; L. 23-25).

He did not know what sign is necessary for the restroom and that it is the responsibility of the owner and tenant to ascertain the signage (Tr. p 238; L. 24-25; p. 239; L. 1-8). That the restrooms should not have signs that they are accessible (Tr. p. 238; L. 11-19) and that putting a sign that the Diner is accessible is not warranted as it is misleading (Tr. p. 239; L. 16-20).

He does not remember the seating configuration at the Plaza Diner, but recalls

that there were booths and fixed seats (Tr. p. 256; L 11-16). He testified that the existing fixed seating and tables do not allow clear floor space and accessible route through the space and the aisle is not ADA compliant (Tr. p. 265; L. 2-8). He did not know what the width of the aisle leading to the restrooms had to be for the aisle to be ADA compliant (Tr. p. 265;   L. 9-18).

He cannot say if both restrooms are demolished and one restroom is built that the Diner would maintain its beer and wine license (Tr. p. 269; L. 12-25; p. 270; L. 5-10). That if the Diner has to maintain two ADA compliant bathrooms the Diner could lose, gain or maintain its seating capacity (Tr. p. 270; L. 19-25; p. 271; L. 1-3). That the men's bathroom can potentially be made fully code compliant without enlarging the men's room (Tr. p. 274; L. 20-23). He does not know what the required clear floor space is for an ADA compliant bathroom, and is unaware of the floor space in the men's bathroom (Tr. p. 275; L. 4-11). He did not do any cost analysis of what it would cost to make the restrooms ADA compliant (Tr. p. 276; L. 24; p. 277; L. 1-3). He agreed that the Diner would have to be closed for a significant period of time to do a reconfiguration to make it ADA compliant (Tr. p. 279; L. 1-3)

He does not recall the height of the counter (Tr. p. 272; L. 4-11)

**F. Testimony of Defendants' expert, Panagis Georgopoulos**

He is a licensed architect for 30 years (Tr. p. 307; L. 3-8). That the Second Avenue Subway Line at 55th Street will extend to 56th Street   (Tr. p. 309; L. 16-22).

The  New York City Department of Transportation would not grant its consent for a permit on a permanent ramp. A permanent ramp on either side of the building would violate the DOT's corner clearance policy. The cost of a permanent ramp will be

$12,000.00 (Tr. p. 314; L. 9-16)

The vestibule is not ADA compliant and would need to be enlarged to 5 feet by 7 feet (Tr. p. 315; L. 7-15). If the vestibule is enlarged the Diner would lose one four seat booth (Tr. p. 315; L. 20-25; p. 316 (L. 1-4). The cost to reconfigure the vestibule is $5,000.00 to $10,000.00 (Tr. p. 316; L. 9-10).

For the restrooms to be ADA compliant they would need to be demolished and enlarged and the Diner would lose one four seat booth. (Tr. p. 318; L. 12-18; p. 324; L. 12-21).

To make the aisle ADA compliant the booths would have to be reconstructed so that the aisle is 36 inches wide (Tr. p. 322; L. 14-23), and the middle booths would have to be eliminated.

To make the Diner ADA compliant the Diner would lose 10 to 12 seats (Tr. p. 325; L. 21-24).

To install a permanent ramp a revocable consent has to be obtained from the Department of Transportation (Tr. p. 327; L. 4-9). Section 7-06 of the Revocable Consent requires a 15 foot clearance (Tr. p. 360; L. 14-21) from the corner of the building before a permanent ramp can be installed at the Diner.

### G.  Testimony of David Gentile, Accountant for the Plaza Diner

He is an accountant for 25 years and a Certified Public Accountant for the past 10 years (Tr. p. 288; L. 18-25). He does income taxes and tax related issues for restaurants and diners (Tr. p. 289; L. 5-7). The leasehold improvements of $43,500.00 are from an acquisition on October 1, 2003, when defendant, Second Avenue Diner Corp., purchased the business from Aronis Restaurant Corp., for $60,000.00 (Tr. p.

292; L. 9-18).

That there would be a loss of revenue and profit if seating capacity of 5 seats is lost at the Diner. The loss would be between 5% and 10% (Tr. p. 297, L. 7-18). A loss of $30,000.00 in business would mean a loss of $22,500.00 to the bottom line (Tr. p. 298; L. 14-16).

## IV. ARGUMENT

### A. Plaintiff has not met his burden that alterations were performed at the Plaza Diner after January 26, 1992

Title III of the ADA access requirements apply to alterations made to places of public accommodation after January 26, 1992. 28 C.F.R. § 36.402(a). An "alteration" is defined as a "change to a place of public accommodation … that affects or could affect the usability or facility or any part thereof." 28 C.F.R. § 36.402(b). Alterations include remodeling, renovation, rehabilitation and changes in structural parts or elements, and changes or rearrangements in the plan configuration of walls and full height partitions. 28 C.F.R. § 36.402(b)(1). Alterations triggering compliance with Title III do not include normal maintenance, reproofing, painting wallpapering, asbestos removal or changes to mechanical and electrical systems "unless they affect the usability of the building…" Id. See, also Molloy v. Metropolitan Transportation Authority, 94 F.3d 808 (2nd Cir. 1996) (taking a "common sense approach" and holding that removal of ticket clerks not an "alteration").

The restaurant at the building located at 1066 Second Avenue, New York City was constructed prior to the effective date of Title III of the ADA. There was no evidence

by Plaintiff that the Plaza Diner underwent any alteration after January 26, 1992, within the meaning of the regulations referred to above.

The Court then applies the legal standard regarding existing facilities when determining whether there has been a violation of Title III.

## B.  Plaintiff Has Not Met His Burden On The Readily Achievable Standard.

Even if Kreisler had standing to being this action, he has failed to meet his burden of proof that the removal of the barriers required to make the Plaza Diner ADA compliant are readily achievable.

Barrier removal and alternative access requirements with respect to existing facilities are required only if meeting such requirements is readily achievable. 42 U.S.C. § 12181(b)(2)(A)(iv).

"Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

It is Plaintiff's burden to establish that the modifications sought with respect to access to the Plaza Diner are readily achievable, and as set forth below the Plaintiff has failed to meet his burden, or in the alternative if Plaintiff did in fact meet his burden, the Defendants have shown that the modifications sought by Plaintiff are not readily achievable and that the costs of the modifications exceed the benefits.

### (a)  The Step at the Entrance To The Plaza Diner.

To address the step at the entrance to the restaurant, Plaintiff seeks to have Defendants install a permanent ramp at the Plaza Diner. Defendants argue that the installation of a permanent ramp is not readily achievable, and in any event, a portable ramp serves the needs of wheelchair patrons.

The property on which the Plaza Diner is located has been identified as an acquisition target by the City of New York MTA in connection with the Second Avenue Subway Line. See, http://www.mta.info/capconstr/sas/documents/feis/chapter08.pdf. (at pdf page 17). (A public record document).

Defendants' expert, Peter Georgopoulos, a licensed architect testified that the NYC Department of Transportation will not allow installation of a permanent ramp on Second Avenue because of the 55th Street Station Subway which will be a part of the Second Avenue Subway Line.

The NYC Department of Transportation must also provide its consent on all structures (including permanent ramps) on New York City sidewalks as the sidewalks are the property of the City of New York. See, http://www.nyc.gov/html/dot/html/permits/revconif.shtml; (A revocable consent is the grant of a right to an individual or organization to construct and maintain certain structures on, over or under the inalienable property of the City (that is the streets and sidewalks).

In addition, a permanent ramp leading to the entrance of the Plaza Diner along Second Avenue or 56th Street is not readily achievable as it violates the NYC Department of Transportation Revocable Consent Rules Section 7-06(c) which mandates that no permanent structure be placed on a sidewalk for ten feet extending the corner of a building. See, The Rules Related to Revocable Consents, Title 34, Chapter 7 of the Rules of the City of New York.



**Illustration 1**

Moreover, the installation of a permanent ramp would require that the vestibule at the Diner be changed and further changes to the Diner be made as set forth below.

### (b) The Vestibule at the Diner

Plaintiff's expert, Leon Geoxavier,  did not present any cost estimates or how the vestibule could be reconfigured to make it ADA compliant in his expert report. He testified that the cost to reconfigure the vestibule would be between $5,000.00 - $10,000.00. Leon Geoxavier did not know how big the vestibule would need to be to be ADA compliant.

Defendant's expert , Peter Georgopoulos, testified that the vestibule would need to be enlarged to 7 feet by 5 feet and the cost would be between $5,000.00 and $10,000.00. Enlarging the vestibule would result in a loss of one four seat booth.

Plaintiff failed to meet his burden that making the vestibule ADA compliant is readily achievable.

### (c) Failure to Provide Accessible Fixed Tables in the Inside Seating Area

Plaintiff did not present any evidence as to the seating area or fixed tables. The Plaza Diner has fixed tables which can seat 40 people. At least 2 seats or 5% are reserved for people with disabilities in compliance with ADAAG Section 5.1 (Defendants' Exhibit 14, P Georgopoulos Architect Report, p.2). Therefore, there is no violation of ADAAG Section 5.1.

### (d) The Cashier/Serving Bar Counter is higher than 36 inches

Plaintiff presented no evidence as to the height of the counter or the counter seating area. Plaintiff's expert did not measure the height of the counter. The Diner provides for service at an accessible table within the counter area which complies with ADAAG Section 5.2. (Defendants' Exhibit 14, P Georgopoulos Architect Report, p.2).

### (e) Failure to Provide Adequate Directional and Accurate Signage

Plaintiff presented no evidence that Defendants failed to provide adequate directional and accurate signage.

There is signage inside the Diner denoting priority seating for people in wheelchairs and the availability of assistance (Defendants' Exhibit 14, P Georgopoulos Architect Report).

Furthermore, Plaintiff's expert witness testified that putting up signage that the

Diner is ADA accessible is not warranted as it is misleading (Tr. p. 239; L. 16-20), and that it is the responsibility of the owner and tenant to ascertain signage (Tr. p. 238; L. 24-25;  p. 239; L. 1-8).

The ADAAG does not specify any requirements for signage for non compliant or partially compliant facilities. In fact, providing ADA compliant signage that the Diner is accessible is misleading and dangerous to people with disabilities (i.e., to the blind, as ADA compliant signage requires Braille under the ADAAG).

Plaintiff has not met his burden that the Defendants failed to provide adequate directional and accurate signage.

**(f) <u>Failure to Provide Signage that Accessible Services are Provided for People with Disabilities</u>**

Plaintiff presented no evidence that Defendants failed to provide signage that accessible services are provided for people with disabilities.

There is signage inside the Diner denoting priority seating for people in wheelchairs and the availability of assistance (Defendants' Exhibit 14, P Georgopoulos Architect Report).

Furthermore, Plaintiff's expert witness testified that putting up signage that the Diner is ADA accessible is not warranted as it is misleading (Tr. p. 239; L. 16-20), and that it is the responsibility of the owner and tenant to ascertain signage (Tr. p. 238; L. 24-25;  p. 239; L. 1-8). Plaintiff's expert did not know what sign is necessary for the restroom and that the restrooms should not have signs that they are ADA accessible since they are not handicap accessible (Tr. p. 238; L. 11-25).

Plaintiff has not met his burden that the Defendants failed to provide signage that accessible services are provided for people with disabilities.

**(g) Failure to Modify the  Restrooms for Accessibility**

**(i)     Failure to rearrange walls, doors, toilet to increase maneuvering space.**

Defendants acknowledge that the two restrooms do not meet the clear floor space as required by 28 C.F.R. Part 36, Section 4.3.

Plaintiff's expert proposed the demolition of the two restrooms and the construction of one unisex bathroom. However, he did not take any measurements and did not make any proposed configurations or cost analysis. The modification of the restrooms is not readily achievable as set forth below.

First, the Diner maintains a wine and beer license which requires two bathrooms and the Diner would have to apply for a new wine and beer license if one unisex bathroom is constructed. The possibility exists that the Diner may not get a wine and beer license.

Second, to make the restrooms ADA compliant would require the demolition of the two restrooms and one four seat booth adjacent to the restroom. The cost would be $13,000.00 according to Defendants' expert witness.

Third, since the aisle leading to the restrooms is 33 inches wide the booths in the middle of the Diner would have to be demolished to make the aisle 36 inches wide and compliant with the ADA which would result in a further loss of seating capacity.

Plaintiff has failed to meet his burden that the modifications to the restrooms are readily achievable.

**(ii)     Provide an accessible toilet with a rear grab bar**

Plaintiff presented no evidence that there is no accessible toilet with a rear grab bar.

Defendants presented evidence that the women's room is used by persons with disabilities since it is larger than the men's room and that the women's room does in fact have a rear grab bar. Neither Plaintiff or Plaintiff's expert witness have been inside the women's room.

Defendants argue as in paragraph (g)(i) above that the restrooms would have to be demolished and new restrooms constructed that are ADA compliant to provide for an accessible toilet with a rear grab bar.

Plaintiff has failed to meet his burden that constructing a new restroom with an accessible toilet with rear grab is readily achievable.

**(iii)    Failure to Provide a Clear Floor Space of 30 inches by 48 inches in front of a lavatory**

Plaintiff presented no evidence that the Defendants failed to provide a clear floor space of 30 inches by 48 inches in front of a lavatory. Plaintiff's expert did not take any measurements and is of the opinion that the men's room can potentially be made fully ADA compliant without enlarging the restroom  (Tr. p. 274; L. 20-23).

To provide restrooms with clear floor space of 30 inches by 48 inches would require the demolition of the restrooms which is not readily achievable.

**(iv)    Failure to Completely Insulate Lavatory Pipes Under the Sink to Prevent Burns**

Plaintiff failed to provide any evidence that the lavatory pipes were not insulated under the sink or that the bathrooms have hot water. Plaintiff has not been in the two restrooms at the Diner. Plaintiff's expert went into the men's room but did not take any measurements to determine if the lavatory pipes under the sink are at a height that someone using the restroom would be burned. In addition, there is no evidence that the

19

lavatory pipes are exposed under the sink.

Plaintiff has failed to meet his burden that Defendants failed to completely insulate lavatory pipes under the sink to prevent burns.

In any event, the Defendant Diner has represented to counsel that it has covered the lavatory pipes .

### (v)    Failure to provide an accessible soap dispenser

Plaintiff failed to provide any evidence that there is no accessible soap dispenser in the restroom. Plaintiff has not been in the two restrooms at the Diner. Plaintiff's expert went into the men's room  and did not take any measurements to determine if the soap dispenser is ADA compliant.

Plaintiff has failed to meet his burden that Defendants failed to provide an accessible soap dispenser.

In any event, the Defendant Diner has represented to counsel that it has replaced fixed soap dispensers with bottled soap.

### (vi)    Provide appropriate signage on the outer door indicating that the restroom is handicap accessible

Plaintiff's expert witness testified that putting up signage that the restroom is accessible is not warranted as it is misleading (Tr. p. 239; L. 16-20), and that it is the responsibility of the owner and tenant to ascertain signage (Tr. p. 238; L. 24-25; p. 239; L. 1-8). Plaintiff's expert did not know what sign is necessary for the restroom and that the restrooms should not have signs that they are accessible since they are not accessible  for people with disabilities (Tr. p. 238; L. 11-25).  Plaintiff  has  not  met  his burden that the Defendants failed to provide signage that accessible services are provided for people with disabilities.

**(vii)    Failure to Provide a Safe Handicap Accessible Emergency Exit**

Plaintiff failed to provide any evidence that Defendants failed to provide a safe handicap accessible emergency exit from the Plaza Diner. The ADAAG does not require an emergency exit for people with disabilities.

Plaintiff has failed to meet his burden that Defendants failed to provide a safe handicap accessible emergency exit and that it would be readily achievable to install an emergency exit.

## C.    The Readily Achievable Standard

Under the readily achievable standard, the Plaintiff has the burden to show that removing a barrier is readily achievable. Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership I, 264 F.3d 999 (10th Cir. 2001). The Eleventh Circuit has reached a similar holding in Dietrich v. Atlanta Landmarks 452 F.3d 1269 (11th Cir. 2006). This standard has also been laid out in the Southern District of New York in Pascuiti v. New York Yankees, 1999 WL 1102748 at *4 (S.D.N.Y. 1999) under Title II of the ADA (which applies ADA accessibility obligations to government Defendants).

Under Colorado Cross, that burden includes expert testimony on "precise cost estimates" or "specific drawings or plans" and whether it could be approved by a municipality. In this case, the Plaintiff's expert testimony provided neither precision nor specificity.

Plaintiff's showing at a minimum should include a basic cost benefit analysis. See, Borkowski v. Valley Central School District, 63 F.3d 131 (2nd Cir. 1994) (applying Title II of the ADA finding the plaintiff must provide for a plausible accommodation, the

costs of which facially, do not exceed the benefits).

The Plaza Diner shows a net income of $23,383.00 for 2010 (Defendants' Exhibit 8). However, in 2009, the Diner shows a net income of $8,828.00 (Defendants' Exhibit 7), in 2008 a net income of $519.00 (Defendants' Exhibit 6) and in 2007 a loss of $3,408.00 (Defendants' Exhibit 5). Defendant, J.J.N.K. Corp. for the years 2007 through 2010 shows a net annual income of $36,000.00 (Defendants' Exhibits 9 to 12).

## V. <u>CONCLUSION</u>

This is a case where the Plaintiff simply saw a "step" in front of a restaurant and decided to sue.  It differs little than the 15 other cases Plaintiff has brought against small restaurants, where ostensibly the strategy has been to sue and settle shortly thereafter, enriching both Plaintiff and its counsel. Sadly to small businesses, it's a form of legalized extortion.

From the evidence adduced, Plaintiff had no previous patronage of the store, had never ordered delivery or take out food, but can sue merely by making a few choice self serving statements of his intent to patronize the store, if it becomes ADA compliant.

Legally, as discussed above, Kreisler has no standing to bring this action. Moreover, Kreisler has failed to meet his burden of proof that the removal of the barriers necessary to make the Plaza Diner compliant with the ADA are readily achievable.

Plaintiff lives four blocks from the Diner, but has yet to visit the Diner which provides access to people with disabilities and has a buzzer for assistance and a portable ramp. The voluntary removal of alleged barriers before trial has the effect of mooting Plaintiff's ADA claims. <u>See</u>, <u>Oliver v. Ralph's Grocery Company</u>, ___ F.3d____,

10886 (9th Cir. 2011); <u>Hubbard v. 7-Eleven, Inc.</u>, 433 F.Supp 2d 1134, 1145 (S.D. Cal. 2006). Plaintiff will only dine at the Plaza Diner if the diner is made fully ADA compliant. To satisfy the Plaintiff the Defendants would have to close the Diner down and perform a total renovation. To accomplish this the cost would clearly exceed the benefits.

For the above reasons, entry of a permanent injunction is not appropriate with respect to any of the claimed violations.

Defendants respectfully request this Court to enter judgment in their favor, and dismiss all the Plaintiff's claims and for such other and further relief as is deemed just and proper.

Respectfully submitted,

s/   Paul Stamatelatos_____
Paul Stamatelatos, Esq. (PS4437)
Attorney for Defendants
36-19 Broadway, 2nd Floor
Astoria, NY 11106
Tel. (718) 956-8144
Fax. (718) 956-8147
Email: paulstamatelatos@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November, 2011, the foregoing DEFENDANTS' POST TRIAL CLOSING STATEMENT was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

s/      Paul Stamatelatos_____
Paul Stamatelatos, Esq. (PS4437)
Attorney for Defendants
36-19 Broadway
2nd Floor
Astoria, NY 11106
Tel: (718) 956-8144
Fax:(718) 956-8147
Email: paulstamatelatos@yahoo.com